IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TOMPKINS BUILDERS, INC., )<br>)<br>       *Plaintiff*, )<br>)<br>v. )<br>)<br>ABBA BONDING, INC., *et al.*, )<br>)<br>       *Defendants*. )<br>_____)<br>)<br>WGG, INC., )<br>)<br>       *Third-Party Plaintiff*, )<br>)<br>v. )<br>)<br>TRAVELERS CASUALTY AND )<br>SURETY COMPANY OF AMERICA, )<br>FEDERAL INSURANCE COMPANY, )<br>FIDELITY AND DEPOSIT COMPANY )<br>OF MARYLAND, and ZURICH )<br>AMERICAN INSURANCE COMPANY, )<br>)<br>       *Third-Party Defendants*. )<br>_____) | Case No. 1:07CV00045<br>Judge Emmet G. Sullivan |

<u>**TOMPKINS BUILDERS, INC.'S, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, FEDERAL INSURANCE COMPANY, FIDELITY AND DEPOSIT COMPANY OF MARYLAND AND ZURICH AMERICAN INSURANCE COMPANY'S MOTION FOR DEFAULT JUDGMENT AGAINST ABBA BONDING, INC. AND WGG, INC., AND FOR INVOLUNTARY DISMISSAL OF WGG, INC.'S CLAIMS**</u>

Tompkins Builders, Inc. ("Tompkins"), Travelers Casualty and Surety Company of America ("Travelers"), Federal Insurance Company ("Federal"), Fidelity and Deposit Company of Maryland ("F&D"), and Zurich American Insurance Company ("Zurich")(collectively, the "Sureties"), by their respective counsel, hereby move the Court for a judgment by default against ABBA Bonding, Inc. ("ABBA") and WGG, Inc. ("WGG"), and for involuntary dismissal, with

5/7502.1

prejudice, of WGG, Inc.'s counterclaims and third-party claims. In support of their motion, Tompkins and the Sureties state as follows:

1.     On January 9, 2007, Tompkins filed its Complaint in this action against ABBA and WGG.

2.     On March 8, 2007, ABBA and WGG, by counsel, filed their respective Answers to the Complaint. WGG also filed a Counterclaim against Tompkins. Tompkins filed its Answer to WGG's Counterclaim on March 28, 2007.

3.     Counsel for Tompkins, WGG and ABBA twice met and conferred regarding discovery, and jointly filed an initial and an amended Rule 26(f) report. The Court issued its Scheduling Order on April 30, 2007. The parties subsequently filed a consent motion to amend the Scheduling Order, which the Court granted on July 5, 2007.

4.     On May 1, 2007, the parties exchanged Initial Disclosures pursuant to Rule 26(a). In its Initial Disclosures, Tompkins itemized its then-current estimated damages arising out of the defaults and breaches of WGG and ABBA, which totaled $908,758 as of that date, excluding attorneys fees and costs. Tompkins' current damages arising out of the defaults and breaches of WGG and ABBA total $1,036,828.97. *See* Declaration of Derek Brown, attached hereto as Exhibit 1.

5.     On May 30, 2007, WGG filed a Third-Party Complaint against the Sureties. The Sureties answered the Third-Party Complaint on June 29, 2007.

6.     On May 4, 2007, WGG served a request for production and interrogatories on Tompkins. Tompkins served its written responses to the interrogatories on June 22, 2007, and produced its documents for review on June 15, 2007 and on or about June 26, 2007. On June 20, 2007, ABBA and WGG also issued seven (7) third-party subpoenas, seeking the production of

5/7502.1

documents from various subcontractors and suppliers involved in the construction project which forms the basis of Tompkins' Complaint.

7. On June 8, 2007, Tompkins served its First Requests for Production of Documents and First Interrogatories on ABBA and WGG. To date, neither ABBA nor WGG has properly responded to these discovery requests.[1]

8. On July 17, 2007, ABBA's and WGG's counsel, Waters & Wise, PLLC, filed a motion for leave to withdraw as counsel for ABBA and WGG.

9. On August 1, 2007, the Court entered an order granting Waters & Wise, PLLC leave to withdraw as counsel for ABBA and WGG ("Motion to Withdraw"). The Court also ordered that ABBA and WGG "inform the Court how they intend to proceed in this case by no later than August 10, 2007."

10. Neither ABBA nor WGG informed the Court of how they intended to proceed by the August 10, 2007 deadline, nor has either of them informed the Court of their intentions to-date.

11. Neither ABBA nor WGG has retained substitute counsel in this litigation nor ensured that counsel enters its appearance on their behalf in the above-captioned cases.

12. ABBA and WGG have unfairly prejudiced Tompkins and the Sureties by their lack of representation. Indeed, after having benefited from Tompkins' responses to their discovery requests, ABBA and WGG have failed to respond to discovery requests from Tompkins that seek, among other things, the factual bases of their defenses and claims, as well as other relevant documents and factual information. As a result, Tompkins and the Sureties are unable to prepare for or proceed with depositions and other necessary pre-trial preparations.

---

[1] Counsel for Tompkins did receive, on or about July 12, 2007, directly from ABBA, a binder of documents sent without a transmittal letter which appears to contain undated, unsigned and unsworn interrogatory and document request responses.

13. It has been over four (4) weeks since ABBA's and WGG's counsel moved to withdraw from this case, and over two (2) weeks since ABBA and WGG were required to inform the Court of their intentions as to these proceedings. ABBA and WGG have had sufficient time to respond to the Court and/or retain counsel yet have failed to do so in violation of the Court's August 1, 2007 Order.

14. "It has been the law for the better part of two centuries…that a corporation may appear in the federal courts only through licensed counsel." *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202-202, 113 S.Ct. 716, 721, 121 L.Ed.2d 656 (1993), *citing Osborn v. President of Bank of United States*, 9 Wheat 738, 829, 6 L.Ed. 204 (1824); *see also Lennon v. McClory*, 3 F.Supp.2d 1461, 1462 n.1 (D.D.C. 1998)("A corporation cannot represent itself and cannot appear pro se. It must be represented by counsel or it will be treated as not having appeared at all, and default judgment may be entered against it."). Because ABBA and WGG have failed to retain new counsel and failed to advise the Court of any intention they may have to retain counsel, the Court should enter default judgment against them as to Tompkins claims, in the amount of $1,036,828.97, which represents Tompkins' current estimated damages arising out of their defaults and breaches. *See* Exhibit 1.

15. Under Rules 41(b) and (c) of the Federal Rules of Civil Procedure, a court may dismiss an action or claim, including any counterclaim or third-party claim "[f]or failure of the plaintiff to prosecute or to comply with…any order of court." FED. R. CIV. P. 41(b). In the instant case, the Court should dismiss WGG's counterclaims and third-party claims, with prejudice, because of WGG's failure to both comply with the Court's August 1, 2007 Order and

notify the Court of its intentions regarding engagement of counsel, and because its failure to engage new counsel constitutes a failure to prosecute its counterclaims and third-party claims.

16. Tompkins and the Sureties respectfully submit that sanctions less drastic than default judgment and dismissal will not be adequate in light of ABBA and WGG's history of disregard of the authority of this Court. Ordering ABBA and WGG to appear by counsel already has proven unsuccessful, and therefore issuing further orders likely will have the same result. In addition, as shown in the Motion to Withdraw filed by Waters & Wise, PLLC, ABBA and WGG have been non-responsive regarding their obligations under the Federal Rules, and have failed to participate in developing a strategy to prosecute their claims and defenses. *See* Motion to Withdraw, ¶¶ 1-2. Furthermore, imposing fines or penalties on ABBA and WGG also likely will prove unsuccessful, given that ABBA and WGG apparently have refused to pay for services rendered by their own counsel. *See* Motion to Withdraw, ¶ 3.

WHEREFORE, for the reasons set forth herein, Tompkins Builders, Inc., Travelers Casualty and Surety Company of America, Federal Insurance Company, Fidelity and Deposit Company of Maryland, and Zurich American Insurance Company hereby move the Court for a judgment by default against ABBA Bonding, Inc. and WGG, Inc., and in favor of Tompkins, in the amount of $1,036,828.97, and for involuntary dismissal, with prejudice, of WGG's counterclaims and third-party claims, and for such further and different relief as the Court deems just and proper.

DATED: August 24, 2007

5/7502.1

Respectfully submitted,

/s/ Donna M. Crowe
Robert J. Symon (D.C. Bar 436245)
Donna M. Crowe (D.C. Bar 481946)
Bradley Arant Rose & White LLP
1133 Connecticut Avenue, N.W., 12th Floor
Washington, D.C. 20036
Tel. 202-393-7150
*Attorneys for Tompkins Builders, Inc.*


/s/ Jeffrey M. Mervis
Jeffrey M. Mervis (D.C. Bar 426257)
Mervis & Associates, LLC
51 Monroe St., Suite 608
Rockville, MD 20850
Tel. 301-762-0020
*Attorneys for Travelers Casualty and Surety Company of America, Federal Insurance Company, Fidelity and Deposit Company of Maryland, and Zurich American Insurance Company*

5/7502.1

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of August 2007, true and correct copies of the foregoing Status Report and Recommendation and Motion for Default Judgment and Involuntary Dismissal were sent by first class mail to:

ABBA Bonding, Inc.
1334 Ridgewood Drive
Lillian, AL  36549
ATTN:  Morris Sears

WGG, Inc.
654 W. Main Street
Palmyra, PA  17078
ATTN:  Robert Carlson

Gerald W. Ittig
1901 Eighteenth Street, N.W.
Washington, D.C.  20009
*Registered Agent for WGG, Inc.*

                                            /s/ Donna M. Crowe
                                            Donna M. Crowe

5/7502.1

DECLARATION OF DEREK BROWN

DEREK BROWN declares as follows:

1. My name is Derek Brown. I am over 21 years of age and competent to make this Declaration. The matters set forth in this Declaration are true and correct and based upon my personal knowledge.

2. I am currently employed by Tompkins Builders, Inc. ("TBI"), and hold the position of Senior Project Manager. I have been employed by TBI as a Senior Project Manager for 2 years. Prior to that, I was employed by TBI as a Project Manager for 5 years.

3. On or about January 21, 2004, TBI entered into a prime contract (the "Prime Contract") with NJA Development Partner LLC ("Owner"), to construct the Capitol Hill Tower apartments, located at 1000 New Jersey Avenue, S.E., Washington, D.C. (the "Project").

4. I was first assigned to the Project in August 2004 and served as TBI's Senior Project Manager from the start of TBI's work through completion of the Project.

5. My responsibilities as Senior Project Manager included overseeing all of TBI's work at the site, including the work of TBI's subcontractors on the Project, which included WGG, Inc. ("WGG"). I had significant contact with subcontractor personnel, including the Project personnel for WGG. I was responsible to ensure that all of TBI's subcontractors performed in accordance with their subcontracts with TBI.

6. On or about November 2, 2004, TBI entered into a written subcontract agreement with WGG (the "WGG Subcontract"), whereby WGG agreed, among other things, to perform and furnish all work, labor, services, materials, plant, equipment, tools,

5/7597.1

scaffolds, appliances and other things necessary to perform the glass and glazing work for the Project. As part of my regular duties, I reviewed, am familiar with, and was responsible for administering the WGG Subcontract.

7. On or about December 28, 2004, ABBA Bonding, Inc. ("ABBA"), as surety, issued a Labor and Material Payment Bond, No. RL7866, on behalf of WGG, as principal, and in favor of TBI, as obligee (the "Payment Bond"). In the Payment Bond, ABBA guaranteed to make payment to all persons supplying labor and material used or reasonably required for use in the performance of WGG's Subcontract. As Senior Project Manager on the Project, I was responsible for making sure WGG's Payment Bond was in place, for communicating with ABBA, the bond surety, when necessary, and for initially managing any claims or notices under the Payment Bond.

8. On or about December 28, 2004, ABBA, as surety, issued a Performance Bond, No. RL7866, on behalf of WGG, as principal, and in favor of TBI, as obligee (the "Performance Bond"). In the Performance Bond, ABBA guaranteed the performance of its principal, WGG, under the Subcontract, and agreed to promptly remedy any default by WGG or promptly complete, or provide sufficient funds to complete, the Subcontract in accordance with its terms and conditions should WGG fail to do so. As Senior Project Manager on the Project, I was responsible for making sure WGG's Performance Bond was in place, for communicating with ABBA, the bond surety, when necessary, and for initially managing any claims or notices under the Performance Bond.

9. WGG failed to properly or timely fulfill its obligations under the Subcontract. Among other things, WGG failed to prosecute its work with promptness and diligence, failed to complete its work in accordance with the construction schedule,

failed to provide sufficient skilled manpower to complete its work, failed to supply sufficient material and equipment to complete its work, failed to pay for labor, materials, equipment, supplies and services used in the performance of its work, and failed to perform its work in accordance with the Contract Documents. Throughout 2005 and 2006, I and others from TBI met and corresponded with WGG on numerous occasions regarding these breaches and defaults, and I and others from TBI routinely copied ABBA on the correspondence.

10. WGG failed to remedy these breaches and defaults. As a result, on several occasions, including, without limitation, April 12, 2006, and September 29, 2006, TBI notified WGG and ABBA, in writing, that WGG was in default under the Subcontract.

11. On or about April 18, 2006, ABBA acknowledged, in writing, TBI's April 12, 2006, notice of default to WGG, and represented that ABBA would provide all labor and materials necessary to complete the Subcontract. Throughout 2006, ABBA corresponded and communicated with TBI, repeatedly representing to TBI that ABBA would fulfill its obligations under the Payment Bond and the Performance Bond, and complete the Subcontract work.

12. Notwithstanding these promises and representations, to date ABBA has failed and refused to provide the labor and materials necessary to complete the Subcontract.

13. In addition, WGG has not made payment to numerous suppliers for labor, materials, equipment, supplies, services and the like, used or reasonably required for use in the performance of the Subcontract. TBI notified ABBA and WGG of these supplier claims. To date, neither ABBA nor WGG has made payment to such suppliers.

14. On or about September 29, 2006, TBI made claim against ABBA under the Performance Bond for the costs, expenses and damages arising out of WGG's defaults under the Subcontract. To date, ABBA has failed and/or refused to perform its obligations under the Performance Bond or the Payment Bond.

15. As a result of WGG's and ABBA's defaults and breaches, TBI was caused and continues to be caused to perform work that should have been performed by WGG or ABBA, repair or replace work improperly performed by WGG, and otherwise incur costs and expenses, including legal fees.

16. To date, there is a balance due and owing to TBI by WGG and ABBA for costs and expenses arising out of WGG's default. This amount continues to accrue as TBI continues to incur costs and expenses to cure WGG's default. Attached as Exhibit A is a spreadsheet showing the amount of these costs and expenses incurred or estimated by TBI to date, which total $ 1,036,828.97. I prepared the spreadsheet as part of my responsibility as Senior Project Manager on the Project. In my experience as a Project Manager and Senior Project Manager, these costs and expenses are reasonable.

17. I declare under the penalty of perjury that the foregoing is true and correct.

This is the 23rd day of August, 2007.

_____
Derek Brown

DAMAGES ARISING OUT OF WGG'S DEFAULT
*Prepared at the request of Counsel

Subcontract Date: November 2, 2004

| DESCRIPTION | AMOUNT | Comments |
|---|---|---|
| Original Subcontract Value | $1,741,657.00 | |
| Executed Change Orders | $83,245.00 | Change orders #1, #2, and #3 |
| Unexecuted/Pending Change Orders | $115,607.00 | |
| Amount Paid to WGG | ($1,654,094.29) | Includes payments to WGG vendors on behalf of WGG and joint checks. |
| CCIP Premium Amount | ($52,580.00) | Balance due CCIP program from WGG. |
| **Available Subcontract Balance** | **$233,834.71** | |
| **Schedule Costs** | | |
| LD's Directly Attributable to WGG | ($47,250.00) | LD's for units complete with the exception of terrace doors. |
| Tompkins Extended GC's Attributable to WGG | ($146,511.51) | Allocated based on the percentage of manpower on site directly attributable to WGG. |
| **Tompkins Labor Costs** | | |
| Tompkins Direct Labor | ($8,888.70) | Need balance of missing weeks and 2005 labor costs. |
| Tompkins Supervision for TSI | ($59,976.95) | Per Supervision noted on TSI Tickets |
| **Subcontractor Costs** | | |
| TSI / Exterior Wall Systems | ($580,644.81) | Complete WGG Contract work and repair defective work. |
| NCF | ($69,352.34) | Correct damage caused by WGG, work related to late completion of WGG's work, and repair damage due to rework of defective work. |
| C.J. Coakley | ($69,315.94) | Correct damage caused by WGG, work related to late completion of WGG's work, and repair damage due to rework of defective work. |
| Sparkle Painting | ($12,742.46) | Correct damage caused by WGG, work related to late completion of WGG's work, and repair damage due to rework of defective work. |
| Federal Painting | ($15,813.81) | Correct damage caused by WGG, work related to late completion of WGG's work, and repair damage due to rework of defective work. |
| T.A. Beach | ($3,560.00) | Provide power to WGG swingstage as requested by WGG. Estimate WGG's portion of costs which are being tallied. |
| **Legal or Consulting Costs** | | |
| Bradley Arant Rose & White | ($31,928.05) | Legal Fees & Costs to date |
| **Unpaid Vendors** | | |
| Virginia Glass & Mirror | ($9,566.07) | Virginia Glass & Mirror has filed a notice of intent to lien. |
| Graham Architectural | ($9,402.20) | Per WGG Lien Release 10/25/06 |
| Kenseal Construction Products | ($3,706.22) | Kenseal has filed a notice of intent to lien. Value is from lien notice. |
| Millstone Enterprises | ($44,187.14) | Per WGG Lien Release 10/25/06 |
| Bestline (Lift Rental) | ($5,836.84) | Per WGG Lien Release 10/25/06 |
| Supersky Products | ($39,500.00) | Per WGG Lien Release 10/25/06 |
| Allied Building Products | ($11,819.81) | Per WGG Lien Release 10/25/06 |
| Impact Technologies | ($660.84) | |
| **Unresolved Risk** | | |
| 135 Degree Window Corrective Work | ($100,000.00) | ESTIMATE. Pending Resolution with Owner, multiple requests have been made of WGG to advise what corrective action will be taken. No response to date. |
| **TOTAL DAMAGES TO DATE** | **($1,036,828.97)** | |

Page 1

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TOMPKINS BUILDERS, INC., )<br>)<br>    *Plaintiff*, )<br>)<br>v. )<br>)<br>ABBA BONDING, INC., *et al.*, )<br>)<br>    *Defendants*. )<br>_____)<br>)<br>WGG, INC., )<br>)<br>    *Third-Party Plaintiff*, )<br>)<br>v. )<br>)<br>TRAVELERS CASUALTY AND )<br>SURETY COMPANY OF AMERICA, )<br>FEDERAL INSURANCE COMPANY, )<br>FIDELITY AND DEPOSIT COMPANY )<br>OF MARYLAND, and ZURICH )<br>AMERICAN INSURANCE COMPANY, )<br>)<br>    *Third-Party Defendants*. )<br>_____) | Case No. 1:07CV00045<br>Judge Emmet G. Sullivan |

## ORDER

UPON CONSIDERATION OF Tompkins Builders, Inc.'s, Travelers Casualty and Surety Company of America, Federal Insurance Company, Fidelity and Deposit Company of Maryland, and Zurich American Insurance Company's Motion for Default Judgment against ABBA Bonding, Inc. and WGG, Inc. and for Involuntary Dismissal of WGG, Inc.'s Claims ("Motion");

AND UPON CONISDERATION OF any opposition thereto;

5/7502.1

IT IS HEREBY ORDERED that Tompkins Builders, Inc.'s, Travelers Casualty and Surety Company of America, Federal Insurance Company, Fidelity and Deposit Company of Maryland, and Zurich American Insurance Company's Motion is GRANTED;

AND IT IS FURTHER ORDERED that WGG, Inc.'s counterclaims and third-party claims in the above-captioned case against Tompkins Builders, Inc., Travelers Casualty and Surety Company of America, Federal Insurance Company, Fidelity and Deposit Company of Maryland, and Zurich American Insurance Company are DISMISSED WITH PREJUDICE and JUDGMENT is entered against WGG, Inc. and in favor of Tompkins Builders, Inc. and Travelers Casualty and Surety Company of America, Federal Insurance Company, Fidelity and Deposit Company of Maryland, and Zurich American Insurance Company;

AND IT IS FURTHER ORDERED that Tompkins Builders, Inc. is granted JUDGMENT in its favor against WGG, Inc. and ABBA Bonding, Inc., as to all claims asserted against them in the Complaint, including an award of damages in the amount of $1,036,828.97.

                                                                                   _____
                                                                                   Judge Emmet G. Sullivan

Serve copies to:

ABBA Bonding, Inc.
1334 Ridgewood Drive
Lillian, AL 36549
ATTN: Morris Sears

WGG, Inc.
654 W. Main Street
Palmyra, PA 17078
ATTN: Robert Carlson

5/7502.1

Gerald W. Ittig
1901 Eighteenth Street, N.W.
Washington, D.C. 20009
*Registered Agent for WGG, Inc.*

Donna M. Crowe
Bradley Arant Rose & White LLP
1133 Connecticut Avenue, N.W., 12th Floor
Washington, D.C. 20036
*Attorneys for Tompkins Builders, Inc.*

Jeffrey M. Mervis
Mervis & Associates, LLC
51 Monroe St., Suite 608
Rockville, MD 20850
*Attorneys for Travelers Casualty and Surety Company of America,*
*Federal Insurance Company, Fidelity and Deposit Company*
*of Maryland, and Zurich American Insurance Company*

5/7502.1